IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

December 12, 2023 09:25 AM
ST-2023-CV-00146
TAMARA CHARLES
CLERK OF THE COURT

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
\*\*\*\*\*

| | | |
|---|---|---|
| SANSARA A. CANNON, | | ) CASE NO. ST-2023-CV-00146 |
| | | ) |
| | | ) ACTION FOR DAMAGES; MANDATORY |
| | Plaintiff, | ) INJUNCTIVE RELIEF; SPECIFIC |
| | | ) PERFORMANCE; DISGORGEMENT AND |
| | | ) RECOVERY OF COMPENSATION PAID TO |
| -vs- | | ) UNLICENSED CONTRACTOR; CONSUMER |
| | | ) FRAUD; MISREPRESENTATION; BREACH OF |
| | | ) CONTRACT; NEGLIGENCE; DECLARATORY |
| FULCRUM CONSTRUCTION, LLC, | | ) RELIEF; and UNFAIR BUSINESS PRACTICES |
| | | ) |
| | | ) JURY TRIAL DEMANDED |
| | Defendant. | ) |

Cite as 2023 VI Super 78U

## MEMORANDUM OPINION

¶1　　**THIS MATTER** is before the Court on Defendant Fulcrum Construction, LLC's ("Fulcrum") Motion for Summary Judgment, filed October 10, 2023. Plaintiff Sansara A. Cannon ("Cannon") did not respond to the Motion within 30 days as required by V.I. R. Civ. P. 56(c)(2)(A). On November 23, 2023, the Court denied Cannon's request for additional time within which to respond to Fulcrum's Motion for Summary Judgment due to her failure to demonstrate neither excusable neglect nor good cause.[1] For the reasons set forth below, the Court will grant Fulcrum's Motion for Summary Judgment.

---

[1] A motion filed before the time to act has passed must show cause; however, a motion filed after the time to act has passed must show excusable neglect and courts must find good cause. Cannon's reason — or lack thereof — for not responding within 30 days pursuant to V.I. R. Civ. P. Rule 56(2)(A) is of importance because Cannon has established a pattern of consistently disregarding this Court's procedural deadlines, and in the instant matter has fully failed to explain why she did not respond to Fulcrum's Motion by November 10, the date of the expiration of the 30-day period to respond. Cannon submitted her request for an extension on November 22, 2023 — twelve days after her deadline. As the language of V.I. R. Civ. P. Rule 6 expressly provides, it is the plaintiff's burden to show good cause or excusable neglect. Therefore, because Cannon failed to provide some reasonable basis for her failure to respond within the time specified, Cannon failed to establish good cause or excusable neglect for an extension under Rule 6. "Excusable neglect and good cause must be shown, not concluded." *People of the V.I. v. Hatcher*, 68 V.I. 378, 381-82 (Super. Ct. 2018); *see also McGary v. J.S. Carambola, L.L.P.*, 69 V.I. 72, 76, 2016 V.I. LEXIS 166, \*4 (V.I. Super. Ct. 2016) ("The Supreme Court of the Virgin Islands has established that in this jurisdiction excusable neglect is essentially synonymous with good cause.") (citing *Fuller v. Browne*, 59 V.I. 948, 955 (V.I. 2013)); *Daniel v. Gov't of the V.I.*, No. ST-17-CV-293, 2019 V.I. LEXIS 8, at \*4 (Super. Ct. Jan. 31, 2019) ("[C]ourts have equated 'good cause' with the concept of 'excusable neglect,' which requires a demonstration of good faith on the part of the party seeking an

## I.    INTRODUCTION

¶2    Cannon contracted with Fulcrum in December 2021 for interior renovations of her condominium in St. Thomas. In late December, after work on the initial contract had begun, Cannon authorized the first of eight change orders to which both parties agreed between December 2021 and August 2022. With each change order, Fulcrum provided Cannon with the additional number of days for labor that the new work would add to the initial proposal.[2] The change orders also included the additional cost to the initial proposal and a description of the work to be performed. Cannon does not dispute that her signature and date of approval is on every contract change order. The total cost for the work Fulcrum performed, including all eight change orders, came to $141,587.39.[3] The completed work included dry wall, demolition, painting, general construction, electrical, and plumbing.[4] The eight change orders added an additional 57 days of labor to the original estimate of 18 days and Cannon made four payments in advance of completion. She made a $15,000.00[5] down payment by check dated December 29, 2021, when work began under the initial contract, and subsequently made three more payments to Fulcrum via check—$50,000.00[6] dated February 4, 2022, $30,000.00 dated[7] May 13, 2022, and $20,000.00[8] dated Aug 22, 2022. In total, Cannon paid Fulcrum $115,000.00. Both parties agree that the job was completed January 21, 2023.[9] Once the work was completed, Fulcrum sent Cannon a final invoice for the remaining $27,791.37 owed under contract. Cannon responded by questioning the invoice and providing her own invoice of expenses to Fulcrum.[10] Cannon maintains she was improperly charged by Fulcrum and alleges that Fulcrum damaged items in her unit, caused additional uncontracted-for expenses, and created extensive delay and damage that had to be repaired. These include additional costs of $50,000.00[11] plus additional expenses in the amount of $55,165.05 for which Cannon alleges Fulcrum did not reimburse her.[12]

---

enlargement and some reasonable basis for noncompliance within the time specified in the rules."); *but see Henderson v. Gov't of the V.I. ex rel. Harris*, 70 V.I. 69, 73-74 (Super. Ct. 2019) (noting that "good cause" is not necessarily to be interpreted as synonymous to "excusable neglect."). Depending on the circumstances, the phrase "good cause" can also mean something different from 'excusable neglect. *E.g., Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, S. Ct. Civ. Nos. 2015-0123, 2016-0022, 2017 V.I. Supreme LEXIS 41,*10 n.11 (V.I. July 24, 2017) ("For the purposes of this Order, 'good cause' means serious illness, pre-arranged travel, pre-ordered court appearances, personal or family emergency, death or similar circumstances."); *accord In re Red Dust Claims*, 69 V.I. 147, 159, 2017 V.I. LEXIS 98, *20 (V.I. Super. Ct. 2017) ("If the request comes late, then good cause must be shown.").

[2] Compl. ¶12.
[3] Opp'n Pl.'s Mot. & Mem. TRO & Prelim. Inj. 2.
[4] Compl. ¶12.
[5] Pl.'s Reply Def's Opp'n TRO & Prelim. Ex. 2-P.
[6] Pl.'s Reply Def's Opp'n TRO & Prelim. Ex. 11-P.
[7] Def.'s Answer, Affirm. Def, Countercl. ¶16, Ex. 14.
[8] Pl.'s Reply Def's Opp'n TRO & Prelim. Ex. 14-P.
[9] Compl. ¶15.
[10] Pl.'s Reply Def's Opp'n TRO & Prelim. at 5.
[11] Compl. ¶41.
[12] Compl. ¶42.

¶3     In addition, Cannon alleges that after the contracted work was completed, she learned that Fulcrum was not properly licensed. Cannon asserts that Fulcrum was "not operating with the appropriate general, electrical and plumbing contractor licenses for the work solicited but performed, in violation of 27 V.I.C. §331a and other applicable law"[13] and that Fulcrum misrepresented its ability to perform the contracted work.[14]

¶4     After disputing Fulcrum's final invoice for $27,791.37, Cannon sought administrative review of Fulcrum's business practices by filing a consumer complaint with the Virgin Islands Department of Licensing and Consumer Affairs (DLCA) on or about February 22, 2023. While the DLCA administrative review was pending, Fulcrum filed a lien against Cannon's condominium, pursuant to Title 28 V.I.C. Chapter 12. Cannon then filed the instant action on May 8, 2023.

## II.     LEGAL STANDARD

### A. Summary Judgment

¶5     Summary judgment is governed by Rule 56 of the Virgin Islands Rules of Civil Procedure, which states:

> A party may move for summary judgment, identifying each claim or defense— or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.[15]

¶6     Summary judgment will be granted if the "pleading, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."[16] A fact is "material" only if its existence or non-existence will affect the outcome of a lawsuit under applicable law, and an issue is "genuine" if the evidence is such that a reasonable jury could return

---

[13] Compl. ¶ 36.
[14] Compl. ¶ 37.
[15] V.I. Civ. P. 56(a).
[16] Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Skopbank v. Allen-Williams Corp.*, 39 V.I. 220, 227 (D.V.I. 1998); *Accord Green v. Hess Oil Virgin Islands Corp.*, 29 V.I. 27, 30 (Super. Ct. 1994).

a verdict for the non-moving party."[17] Or, as the Virgin Islands Supreme Court stated in *Antilles School, Inc. v. Lembach*,[18] summary judgment is appropriate when after "considering all of the evidence, accepting the nonmoving party's evidence as true, and drawing all reasonable inferences in favor of the nonmoving party, the court concludes that a reasonable jury could only enter judgment in favor of the moving party."[19] Summary judgment is proper if the non-moving party fails to establish the existence of an element essential to its case and on which the party would bear the burden of proof at trial. [20]The simple assertion of a theoretical cause of action or theory of liability is not enough; a showing must be made as to each of the essential elements of the claim.[21]

¶7    Summary judgment is a "drastic remedy" and only proper where "the pleadings, the discovery and disclosure materials on file . . . show that there is no genuine issue as to any material fact[.]"[22] The nonmoving party must show in its response to a motion for summary judgment that there are "specific facts showing a genuine issue for trial."[23] In addition, "[t]he non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial. Such evidence may be direct or circumstantial, but the mere possibility that something occurred in a particular way is not enough[.]"[24] For a nonmoving party to show some genuine issue of material fact for trial, "'the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla,' in support of its position."[25] Further, "[i]f the non-movant offers evidence that is 'merely colorable' or not 'significantly probative,' summary judgment may be granted."[26] Finally, the "Court may not itself weigh the evidence and determine the truth; rather, we decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party."[27]

---

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[18] 64 V.I. 400 (V.I. 2016).

[19] *Id.* at 409.

[20] *Celotex*, at 322.

[21] *White v. Westinghouse Electric Co.*, 862 F.2d 56 (3d Cir. 1988).

[22] *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 228 (V.I. 2013) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)).

[23] *Williams*, 50 V.I. at 194 (V.I. 2008) (quoting FED. R. CIV. P. 56(e)); see V.I. R. Civ. P. Rule 56; *see also Basic Servs., Inc. v. Gov't of the V.I.*, 71 V.I. 652, 658 (2019) ("A movant is entitled to summary judgment if there is no triable issue of material fact.").

[24] *Anthony*, 58 V.I. at 229 (quoting *Williams*, 50 V.I. at 194-95).

[25] *Anderson v. American Fed'n of Teachers*, 67 V.I. 777, 789 (V.I. 2017) (quoting *Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 527-28 (V.I. 2012)).

[26] *Pemberton Sales & Serv. v. Banco Popular de P.R.*, 877 F. Supp. 961, 965 (D.V.I. 1994).

[27] *Williams*, 50 V.I. at 195 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### III.   ANALYSIS

¶8     As required, the Court reviewed Fulcrum's Motion on its merits, including Cannon's Complaint, 14 exhibits totaling 234 pages, and all evidence on the record, consisting of email exchanges, text exchanges, photographs, the parties' contracts, and all other verified documents. Cannon seeks the following relief, which are primarily based on the allegation that Fulcrum was not properly licensed for the work it performed—an issue currently under review by the DCLA:

1. Preliminary Injunction;
2. Removal and preclusion of lien(s);
3. Declaratory judgment determining rights and obligations of the parties, including adoption of Cannon's allegation that Fulcrum operated an illegal business in violation of statutory requirements;
4. Statutory penalties for providing alleged unlicensed contractor services;
5. Attorney's fees;
6. Monetary damages, including punitive and exemplary damages; and
7. Reimbursement of $115,000 paid to Fulcrum for work performed.[28]

Cannon's Complaint asserts the following causes of action, which the Court addresses below:

A. A private action pursuant to 27 V.I.C. §341 Charges Against License;
B. Consumer Fraud and Misrepresentation;
C. Breach of Contract;
D. Negligence;
E. Declaratory and Injunctive Relief; and
F. Unfair Business Practices.

## A.   Title 27 V.I.C. §341 does not provide a private right of action.

### 1. The DLCA determines whether Fulcrum was appropriately licensed for work performed under contract for Cannon.

¶9     Fulcrum asserts that there is no genuine dispute as to any material facts related to its licensure status and ability to perform the work it performed. It maintains that it represented itself to Cannon as a "construction company who also offers professional design service" in its initial proposal.[29] Fulcrum also contends that it was a licensed contractor while performing under its

---

[28] Compl. at 17.
[29] Mot. Summ. J. Ex. 1.

contract and that 'where necessary retained other qualified and licensed professionals to provide subcontractor's services.'[30]

¶10     Fulcrum argues that it was properly licensed for the work it performed on Cannon's condominium;[31] and that it never represented itself as a licensed electrician or plumber, as Cannon alleges. Fulcrum does not dispute that it "does not possess a general construction license," that it is "not a 'licensee' under Section 341," or that it possesses any of the licenses "delineated in 27 V.I.C. 331(a)." [32] These statutes fall within Chapter 10 of Title 27 under the governance of the Virgin Islands Board of Contractors, Trades and Crafts within the DLCA.

¶11     Pursuant to Title 27 V.I.C. § 332, any person that wants to practice in the Virgin Islands as any of the professions listed in Section 331(a) or who wants "to engage in any construction trade as a business" must obtain a license to do so.[33] Title 28 V.I.C. §253 describes who is entitled to a construction lien: "[A] prime contractor, subcontractor, or subsubcontractor . . . ." Section 254(d) specifically excludes any contractor, subcontractor, or subsubcontractor  who is not licensed as required by Chapters 7, 8, or 10 of Title 27.[34] A person who has entered into a real estate improvement contract is considered a "prime contractor" – or "Contractor" if he has contracted to perform work as defined by statute under definition of Contractor.[35] Neither party disputes that Fulcrum is licensed by DLCA as masonry and painting contractor.[36]

¶12     Cannon alleges that Fulcrum performed general contracting, electrical, and plumbing work on her condominium without proper licensing to do so.[37]  The issue of whether Fulcrum was properly licensed for work performed is currently under administrative review. After receiving her final invoice from Fulcrum, Cannon filed a claim with DLCA under Section 341 (Charges Against Licensee)  in February 2023 to investigate Fulcrum's licensure, and to determine whether Cannon

---

[30] Mot. Summ. J. at 36.

[31] Mot. Summ. J. at 36.

[32] Mot. Summ. J. at 30.

[33] *See also* 27 V.I.C. § 331a. Unlawful practice of general construction. "It shall be unlawful for any person to operate as or use the title of contractor or the titles of the following professions within the Virgin Islands unless the person is licensed as provided for in this chapter: (1) General Construction Contractor(2) Plumber Contractor(3) Electrician Contractor(4) Mechanic Contractor(5) Master Plumber(6) Master Electrician(7) Master Mechanic(8) Fiber Optic Technician."

[34] "A construction lien does not exist under this subchapter in favor of any contractor, subcontractor, or sub-subcontractor who is not licensed as required by title 27 chapters 7, 8, or 10 of the Virgin Islands Code or other applicable law of the Virgin Islands. . . ." 28 V.I.C. § 254(d).

[35] Pursuant to 27 V.I.C. § 331, a "Contractor" is defined as any person contracting or undertaking as prime contractor, subcontractor, or sub-subcontractor of any tier to do any erection, building, construction, reconstruction, demolition, repair, maintenance, or related work on any public or private project." A "General Construction Contractor" is defined as "a person or business that contracts to oversee a building project usually involving the use of subcontractors and manages all aspects of the day-to-day activities at the jobsite."

[36] Mot. Summ. J. Ex. 32.

[37] Compl. ¶¶40-41.

was properly billed for work performed.[38] Section 341 governs the process for pursuing a grievance against a licensed Contractor, General Contractor, or other licensee under Section 331. Pursuant to Section 341, the aggrieved person may file charges against the licensee with the Virgin Islands Board of Contractors, Trades and Crafts within DLCA. Unless the charges are dismissed as unfounded or frivolous, a hearing will be held on all charges after an investigation is conducted. As of the date of this Order Cannon has not advised the Court of whether DLCA has concluded its investigation or scheduled a hearing.

¶13    Jurisdiction of DLCA is conveyed by statute to determine whether Fulcrum's work falls within parameters of a "real estate improvement contract," [39] and whether Fulcrum was adequately licensed for work performed.[40]

### 2. Cannon does not possess private right of action under 27 V.I.C. §341.

¶14    "A private right of action is the right of an individual to bring suit to remedy or prevent an injury resulting from an actual or threatened violation of a legal requirement."[41]

¶15    Fulcrum asserts that "the record shows" it was a licensed contractor and that it retained other qualified and licensed professionals "to provide subcontractor's services."[42] Fulcrum also argues that Cannon's Charges Against License claim in the instant action is barred as a private right of action.

¶16    Fulcrum points out that the test for whether a statute creates an implied right of action is found in the United States Supreme Court decision *Alexander v. Sandoval*, with the relevant inquiry involving two steps. [43] First, the text and structure of the statute must be examined to determine whether the legislature intended to create a personal right. Second, the text, structure

---

[38] Compl. ¶2.

[39] Pursuant to 28 V.I.C. § 252(a), a "real estate improvement contract" is an "agreement to perform services, or to furnish materials for the purpose of producing a change in the physical condition of land or of a structure including: . . . construction or installation on, above, or below the surface of land; [and] demolition, repair, remodeling, or removal of a structure previously constructed or installed."

[40] *See* 27 V.I.C. §331(a). Unlawful practice of general construction "(a) It shall be unlawful for any person to operate as or use the title of contractor . . . within the Virgin Islands unless the person is licensed as provided for in this chapter."

[41] *Olive v. deJongh*, 57 V.I. 24, 43 (Super. Ct. 2012) (citing *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 (3d. Cir. 2007)). In *Olive*, the plaintiff alleged that defendants violated conflict of interest rules in order to improve the governor's property at the expense of the people of the Virgin Islands. The court held that the conflict-of-interest laws, V.I. Code Ann. tit. 3, §§ 1100-1108, did not create a private right of action allowing individuals to litigate in the place of the Attorney General. It found the conflict-of-interest laws did not contain "rights-creating language," focused almost exclusively on the persons being regulated and not those protected and created a comprehensive enforcement method entrusted to the Attorney General. *Olive v. deJongh*, 57 V.I. 24, 30 (Super. Ct. 2012).

[42] Mot. Summ. J. at 36.

[43] *Alexander v. Sandoval*. 532 U.S. 275 (2001).

and legislative history of the statute must be examined to determine whether the legislature intended to create a private remedy. An implied private right of action exists under the statute if the legislature intended to create a personal right and a private remedy.[44]

¶17    Section 341(a) states that "Any person aggrieved by an action of a licensee may file charges against the licensee as set forth in this section. Such charges shall be in writing and shall be sworn to by the person making them and shall be filed with the secretary of the Board. The Board, unless dismissed by the Board as unfounded or frivolous, shall hear all charges, after completing any necessary investigation." As was the case in *Sandoval*, the express language here permitting the implementing regulation includes no provision for implementing private enforcement rights.[45]

¶18    Turning to the second step -- to determine whether the legislature intended to create a private remedy[46] -- "an express provision of one method of enforcing a substantive rule *suggests* [emphasis added] that the legislature intended to preclude other methods of enforcement. Furthermore, 'the existence of a comprehensive remedial scheme in the statute' *implies* [emphasis added] that no private right of action exists outside of the method[s] articulated."[47] Section 341 provides for only one method of enforcement and contains its own remedial scheme.[48] Accordingly, the existence of this scheme implies an intent to preclude other methods of enforcement.

¶19    Without an implied personal right or provision for private remedy, 27 V.I.C. §341 does not provide for a private right of action, and "[i]n cases dealing with the Department of Licensing and Consumer Affairs, Virgin Islands courts have determined that exhaustion of administrative remedies should occur before a case is ripe before judicial review."[49] Even assuming arguendo that Cannon had a private right of action, the reality remains that no triable issue as to any material fact exists because DLCA has not yet made a determination on her claim.[50] As a matter of law, 27 V.I.C. §341 does not provide for a private right of action. With respect to Cannon's asserted claim of a private cause of action pursuant to 27 V.I.C. Court finds Fulcrum has met its burden regarding Cannon's Claim for private right of action under 27 V.I.C. §341 Charges Against License.

---

[44] *Olive v. deJongh*, 57 V.I. 24, 44 (Super. Ct. 2012).

[45] *Alexander v. Sandoval*, 532 U.S. 275, 278 (2001).

[46] *Sandoval*, 532 U.S. at 286.

[47] *Joseph v. Legislature of the V.I.*, No. ST-11-CV-419, 2017 V.I. LEXIS 175, at *19-20 (Super. Ct. Apr. 12, 2017) (citing *Olive* at 44) (quoting *Sandoval* at 290).

[48] "It is ... an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." *Olive v. deJongh*, 57 V.I. 24, 46 (Super. Ct. 2012) (citations omitted.).

[49] *Rondon v. Caribbean Leasing & ECO Transp., Inc.*, 74 V.I. 397, 398 (Super. Ct. 2021).

[50] *See Martin v. Martin*, 54 V.I. 379, 381 (2010) ("On summary judgment, the nonmoving party possesses the burden of setting out specific facts showing a genuine issue for trial.").

**B. There is no genuine dispute as to any material fact concerning Cannon's Claim for Consumer Fraud and Misrepresentation.**

¶20     Fulcrum argues that it "made no representation that it was licensed in all areas of construction," and that it "operated openly on the basis that it was collaborating and engaging other professionals and entities such as electricians or plumbers."[51] Fulcrum maintains "that when the scope of work was expanded at Plaintiff's request to include electrical, plumbing, HVAC, and glass installation work, Fulcrum engaged individuals or companies who specialize in those areas."[52] The record is devoid of any statements or representations made to Cannon otherwise. Fulcrum's December 21, 2021, email to Cannon containing its initial proposal described the entity only as a "construction company who also offer professional design services." [53]

¶21     Fraud in the Virgin Islands is defined as a knowing misrepresentation of truth or concealment of a material fact to induce another to act to his or her detriment.[54] When alleging fraud, Rule 9 of Virgin Islands Rules of Civil Procedure affirms that "a party must state with particularity the circumstances constituting fraud." "Courts have determined that to meet this particularity requirement, a complaint alleging fraud normally includes the time, place and content of the false misrepresentations, the facts misrepresented, and the nature of the detrimental reliance."[55] "To properly state a claim for fraudulent misrepresentation, a plaintiff must allege that a fact was misrepresented, and that the plaintiff relied on that misrepresentation to her detriment."[56] "To succeed on a claim of fraudulent misrepresentation one must prove that the maker of a contract 'intends his assertion to induce a party to manifest his assent and the maker (a) knows or believes that the assertion is not in accord with the facts, or (b) does not have the confidence that he states or implies in the truth of the assertion, or (c) knows that he does not have the basis that he states or implies for the assertion.'"[57]

¶22     Cannon alleges that in representing Fulcrum, Lekwan Gregory, Agyei Gregory, and Kai Smith, "knowingly made false and fraudulent representations" to her.[58] She alleges that they represented that they were general contractors and "held themselves out to be licensed general, drywall, electrician and plumbing contractors without being licensed as such by the DLCA." Cannon also alleges that they were not properly licensed as they represented to her and that they

[51] Mot. Summ. J. at 35.
[52] Mot. Summ. J. at 32-33.
[53] Compl. Ex. 3.
[54] *Rondon v. Caribbean Leasing & ECO Transp., Inc.,* 74 V.I. 397, 398 (Super. Ct. 2021).
[55] *Id.*
[56] *Nguyen v. Nguyen,* No. ST-2018-CV-468, 2022 V.I. LEXIS 6, at *13-15 (Super. Ct. Jan. 4, 2022).
[57] *Pollara v. Chateau St. Croix, LLC,* 58 V.I. 455, 471 (2013).
[58] Compl. ¶47.

performed construction services that caused damages, delays, and expenses.[59] Cannon contends that she reasonably relied on the alleged representations made to her and that had she known that Fulcrum was "not licensed in the area of construction including general, electrical and plumbing, and other contractor work besides painting and masonry," she would never have retained or paid Fulcrum in advance to perform and complete the work in her home.[60]

¶23    Cannon claims that because of alleged fraud and misrepresentation, she incurred damage "in a sum, the exact amount of which has yet to be ascertained," but which she alleges to be 'in excess of $170,165."[61] Cannon further asserts that when she "ascertains the exact amount of her damages, she shall seek leave of Court to amend" her complaint "according to proof at the time of trial."[62]

¶24    Cannon does not state with any particularity circumstances constituting fraud – such as the time or place such misrepresentations were made. As the nonmoving party, Cannon has had the burden to set out specific facts showing a genuine issue for trial. The court may not weigh the evidence, but instead, the court must view all inferences from the evidence in the light most favorable to the nonmoving party and take the nonmoving party's conflicting allegations as true if properly supported.[63] The Court has carefully reviewed the record and finds that no material facts in the record refute Fulcrum's evidence of its representations made to Cannon regarding licensing or performance of work outside the scope of its licensing. The Court finds Fulcrum has met its burden of demonstrating that no genuine dispute exists as to any material fact related to fraud or misrepresentation by Fulcrum, and it is entitled to judgment as a matter of law.

**C. Fulcrum has demonstrated no genuine dispute exists as to any material fact in regards to Cannon's claim for breach of contract.**

¶25    Fulcrum contends that it "performed its contractual obligations in a workmanlike manner and did not breach its duty" to Cannon.[64] The elements of a breach of contract claim are (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages.[65] As explained above, the moving party—here Fulcrum— bears the burden to show that the record is devoid of a triable issue of material fact.

---

[59] Compl. ¶¶3,9,16.
[60] Compl. ¶45.
[61] *Compl.* ¶46.
[62] *Compl.* ¶46.
[63] *Pollara v. Chateau St. Croix, LLC*, No. SX-06-CV-423, 2016 V.I. LEXIS 49, at *1 (Super. Ct. May 3, 2016).
[64] Mot. Summ. J. at 45.
[65] *Basic Servs., Inc. v. Gov't of the V.I.*, 71 V.I. 652, 653 (2019).

¶26    It is undisputed that the parties had a contracted agreement followed by eight change order agreements – all signed by both parties – for the work performed on Cannon's condominium. There are no disputable issues as to the duties created by these agreements. Cannon alleges that Fulcrum breached its duty by 1) failing to provide licensed contractor services; 2) failing "to complete the construction in a reasonable timeframe as indicated in change orders of at minimum a couple of days at maximum a couple of weeks;" and 3) failing "to reimburse funds for expenses and certain damages and costs caused by delay and construction work that had to be redone."[66]

### 1. Fulcrum has demonstrated that no genuine dispute of material fact exists concerning the status of its licensure.

¶27    Fulcrum argues that it was properly licensed for the work it performed under its license as Masonry and Painting Contractor from DCLA and that the record presents inadequate dispute of material facts to sustain a breach of contract claim concerning improper licensing. As already discussed above, Cannon filed a claim with DLCA challenging whether Fulcrum maintained the appropriate licenses for the work it completed and performed on her condominium. DLCA's review is pending; however, the mere filing of a complaint with DLCA does not equate with a valid claim for breach of contract based upon having an allegedly improper license. Aside from Cannon's complaint with DLCA, Fulcrum asserts that no genuine dispute of material fact exists challenging its licensure. The Court finds that until DLCA discerns that Fulcrum performed work it was not appropriately licensed for, Cannon cannot rely on this as a cause of breach of contract. Furthermore, upon review of the record, the Court finds no triable issue of material fact concerning Fulcrum's licensure for the work it performed and Fulcrum is entitled to summary judgment on the issue as a matter of law.

### 2. Fulcrum demonstrates that no genuine dispute of material fact exists concerning the timeframe for completion of performance.

¶28    Fulcrum asserts that Cannon herself contributed to an extended completion date by adding additional work outside of the original contract, and by requesting design changes that resulted in delays outside the control of the parties, such as product delivery times. Fulcrum argues that Cannon authorized a total of eight change orders that were added to the original contract over an eight-month period from December 2021 through August 2022.[67] Fulcrum further asserts that Cannon initiated most of the change orders. Shortly after the parties agreed to their first contract, on or about December 31, 2021, Cannon approved and executed the first of the eight change orders, all of which contain her signature. [68] Fulcrum provided Cannon with an initial work schedule

---

[66] Compl. ¶51.
[67] Mot. Summ. J. ¶¶14-15.
[68] Mot. Summ. J. ¶7.

corresponding with the original contract, and each subsequent change order contained information as to only the additional days of labor that would be added.

¶29     Fulcrum argues that within days of the first change order and before work on the original contract and the first change order was completed, Cannon executed a second change order to address remedying damage to the existing plumbing in the unit before work on the drywall of the original contract could be completed.[69] Then again, on January 26, 2022, "before work on the original contract and the first two change orders were completed, Cannon approved another change in scope of work."[70] Fulcrum states that the design changes requested were substantial and extensive.[71] Fulcrum provides before and after photographs demonstrating the extent of improvements made in the areas where it performed the contracted work. Fulcrum includes photos that Cannon herself used of the completed spaces for her listing to advertise the condominium for sale.

¶30     Fulcrum provides substantial evidence of Cannon's acknowledgement that additional delays would be caused by the additional work that she requested.[72]   Fulcrum further asserts that as late as "on or about August 15, 2022," Cannon requested even more work that had not been "contemplated by the prior work orders and which resulted in Change Order No. 8, the final change order."[73] Furthermore, Fulcrum argues that Cannon was not satisfied with the height of the glass installed on the staircase "such that new glass had to be ordered, which caused additional delay with the completion of the project."[74] Fulcrum asserts that Cannon informed Fulcrum of her intention to pay the final remaining balance by stating in a lengthy text in August 2022 that "some of the remaining costs like the finishing and glass which make up the remaining 27k will be paid once those items are actually completed."[75] Fulcrum argues that the record fails to present a genuine dispute of material facts to sustain Cannon's claim of breach of contract based on an unreasonable delay in completion of work.

¶31     As a matter of law, the time within which a contract is to be performed by a contractor may be waived or extended by an owner. "The waiver or extension may be implied as well as express, and what acts or omissions will constitute a waiver depends on their nature and circumstances of the case. Therefore, an owner waives the delay when he either (1) makes

---

[69] Mot. Summ. J. ¶9

[70] Mot. Summ. J. ¶10

[71] Mot. Summ. J. ¶13.

[72] The record demonstrates that in mid-June 2022 Cannon approved a change order with warning that the requested work would potentially include between eight to twelve weeks of delay for completion. See Mot. Summ. J. Ex. 10 (email exchange between Cannon and Agyei Gregory).

[73] Mot. Summ. J. ¶26.

[74] Mot. Summ. J. ¶33.

[75] Mot. Summ. J. ¶38.

payments to the contractor after expiration of the stipulated time for completion of the work, (2) assents to the continuance of the work after the time for the completion of the work has expired, or (3) accepts and pays for the work without objection. "[W]here the agreement for extension or waiver is silent as to the duration of the extension, the law implies that it shall be for a reasonable time."[76] Here, Cannon made: (1) multiple payments to Fulcrum throughout the period it performed on her contracts between December 2021 and August 2022; (2) assented to the continuance of the work by Fulcrum as demonstrated in her initiation and approval of all work orders throughout the same time period; and (3) accepted and paid for the work Fulcrum performed until she received the final invoice. Furthermore, none of the parties' agreements contained a "time is of the essence" clause.

¶32    The Court finds that Fulcrum meets its burden of demonstrating that there is no triable issue of concerning Cannon's claim of unreasonable delay. Fulcrum argues "[I]t is inconceivable, that Plaintiff would insist on 'Design Changes' that required new installation, rerouting of lines, and even Design Plans, that she did not provide and believe that such extensive changes would be completed in a timeframe of 'at minimum a couple of days at maximum a couple of weeks.'"[77] The Court agrees. Summary Judgment is appropriate where there exists no genuine dispute as to any  material facts. In review of the record, including Cannon's complaint, the Court finds that Fulcrum has met its burden by demonstrating that the work contracted for and performed by Fulcrum was not unreasonably delayed.

### 3. Fulcrum has met its burden by demonstrating that there is no genuine dispute as to any material fact that it fully reimbursed Canon for any lost or damaged items.

¶33    Fulcrum argues that it fully reimbursed Cannon for any lost items and that it remedied any damage it caused -- fully at its own expense and without cost to Cannon. Fulcrum argues that that the record  shows no dispute as to material facts on the matter. Fulcrum asserts that it reimbursed Cannon for items that were damaged and that it repaired drywall at no cost to Cannon. Furthermore, Fulcrum argues that these reimbursements and repairs were accepted by Cannon before August 15, 2022, when the final invoice was first submitted.[78]

¶34    Both parties acknowledge flooding created damage in the condominium on or around August 2022,[79] and that Fulcrum repaired the damage. After reviewing the record, the Court finds that no triable issue of material fact exists related to Fulcrum charging Cannon for these repairs. All eight change orders with descriptions of work and the accounting within were approved by

---

[76] *Hewitt v. Morton*, No. 771/1992, 1999 V.I. LEXIS 50, at *19-20 (Apr. 14, 1999) (internal quotations and citations omitted).
[77] Mot. Summ. J. at 40; Compl. ¶51.
[78] Mot. Summ. J. at 46.
[79] Mot. Summ. J. Ex. 11.

Cannon. Cannon did not challenge any of the change orders that she approved, and the record shows Cannon was aware of the final invoice balance owed as early as August 2022.

¶35    Fulcrum argues that there is no genuine dispute of material fact as to issues of damage, poor workmanship, or allegedly owed reimbursements for damage, delays, or substandard performance. Fulcrum points out that after the glass railing was finally received and installed on January 21, 2023, it conducted a "punch-list" walkthrough with Cannon, to identify final items for completion. Fulcrum asserts that it also conducted a final walkthrough with Cannon's uncle and representative, who indicated approval on her behalf.

¶36    Cannon alleges that Fulcrum owes her reimbursements for "expenses and certain damages and costs" caused by a delay of performance and "construction work that had to be redone." Cannon further contends that Fulcrum damaged "drywall, stairs, vanities, clothing rack, walls, barn doors, furniture, stair tops, stair wood, stair tile, tiles, shower, and tub"; that it allowed "to go missing: vanity, light, drains, mattresses, knobs, patio furniture parts, and warranties"; that it charged "for items and labor not installed including swing, new kitchen cabinets, blinds, railing/beams"; and that it double charged "on labor work including: electrical, drywall, paint, cleaning and stair."[80] The voluminous exhibits filed by Cannon do not support her claims of damage.[81] Cannon also alleges – with no evidentiary support – that Fulcrum took funds from her before completing work and delayed completion of work "causing over $50,000 additional costs and expenses that have not been repaid."[82]

¶37    Cannon lists a litany of items in her Complaint that were allegedly damaged or lost, but the Court finds that the only specific reference to damages owed to Cannon on the record is an invoice that Cannon submitted to Fulcrum *after* the initial contract and all change orders were completed and *after* she had received Fulcrum's final invoice. Her invoice included insurance payments of $16,312.46 on her condominium "because no sale of condo allowed to happen"; Property Taxes of $582.47 "because no sale of condo allowed to happen prior to due date"; Cleaning fees of $800 "that had to paid due to additional construction"; Travel and hotel expenses ($1,482.40 travel) ($2,435.39 hotel) "that had to be paid because condo wasn't ready and for construction and to secure house so key and condo not left open to the public"; "Monthly HOA Fees from 2022 February- January 2023 that had to be paid because no sale" ($9,387.20); WAPA Bill of $253.54 for June through September; and $950 for allegedly damaged property that

---

[80] Compl. ¶42.

[81] *Cf. Quaternary Res. Investigations, LLC v. Phillips,* 2018-1543 (La. App. 1 Cir. 11/19/20), writ denied, 2020-01450 (La. 3/2/21), 311 So. 3d 1059 (finding homeowners were entitled to damages award of $154,483.57 in contractor's action against homeowners to recover remaining amount allegedly due under contract for renovations, where homeowners presented ample evidence that work performed by contractor was defective, substandard, or incomplete. La. Civ. Code Ann. art. 2762.).

[82] Compl. ¶41.

included a patio chair, patio wine rack, patio tile, sun and rain wear and tear, and bathroom shower door.[83]

¶38   The Court finds there is no basis in law or fact that provides legal basis for reimbursement of these expenses to Cannon.[84] Moreover, these additional alleged and unsubstantiated expenses were primarily incurred during the same timeframe as the change orders that Cannon requested and approved.[85]

¶39   The record is devoid of any material facts to dispute Fulcrum's assertions. The record provides no receipts or affidavits for repair work or other work performed that was paid for outside of Cannon's agreements with Fulcrum.[86] On the other hand, the record shows that reimbursements were made to Cannon for items that she claims she was not reimbursed for.[87] Fulcrum is burdened with demonstrating that no triable issue exists as to whether Cannon is owed reimbursement offsetting the amount billed in her final invoice. Specific facts must show a genuine issue worthy of trial as opposed to mere general allegations and denials.[88]

¶40   Fulcrum argues that there is no genuine dispute as to material facts that demonstrate it did not breach its contract with Cannon. As already addressed above, the issue of licensure for work performed is under review by DLCA. Until DLCA discerns that Fulcrum performed work that it was not appropriately licensed for, Cannon cannot rely on this as a cause of breach of contract. Summary judgment is proper if the non-moving party fails to establish the existence of an element essential to its case and on which the party would bear the burden of proof at trial.[89] Here, the third and fourth elements for a successful breach of contract claim are missing. Fulcrum has met its burden of proof in this regard. Specific facts must show a genuine issue worthy of trial as opposed to mere general allegations and denials.[90] After combing the record, the Court finds that no genuine

[83] Mot. Summ. J. ¶40.

[84] Pl.'s Reply Def's Opp'n TRO & Prelim. at 5.

[85] *See* Compl. ¶22. Cannon argues that "From December 2021 through September 2022 Plaintiff was unable to list her condo for sale or live in the condo and incurred additional travel, lodging, condo fee, insurance, electricity, and all damage to property expenses as a result of Defendant's unreasonable delay." However, all eight of the change orders were approved by Cannon and were submitted between December 2021 and August 2022.

[86] Mot. Summ. J. Ex. 11.

[87] Change Order Number 7 (July 12, 2022) and Invoice #21.0103D-00004 (July 4, 2022) providing $1,352.61 in credit for sink/vanity, stair tops, storage fee and vinyl tile; Mot. Summ. J. Ex. 12 (Email from Cannon on July 2, 2022, requesting that a future change order include reimbursements for "vanity, stair tops return/damage, tile returns, storage fees, etc."); Compl. at 38 (listing items allegedly owed for).

[88] See *Brodhurst v. Frazier*, 57 V.I. 365, 392 (2012) ("The mere existence of some alleged factual dispute between the parties is not enough to defeat an otherwise properly supported motion for summary judgment.").

[89] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

[90] See *Brodhurst v. Frazier*, 57 V.I. 365, 392 (2012) ("The mere existence of some alleged factual dispute between the parties is not enough to defeat an otherwise properly supported motion for summary judgment.").

dispute of material fact exists on the matters of licensing, time period of contract completion, or reimbursements owed that would offset Cannon's debt. The Court finds Fulcrum is entitled to judgment as a matter of law.

### D. Cannon's negligence claim is barred under the economic loss doctrine.

¶41    "The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract. The general rule is that economic losses may not be recovered in tort (negligence) absent physical injury or property damage."[91] "The purpose of the economic loss rule . . . is to prevent parties from recovering in tort to extricate themselves from prior freely negotiated agreements [, but] . . . tort duties arise to protect individuals unable to protect themselves from the unscrupulous actions of others and irrespective of the existence of a contract."[92]

¶42    When appropriate, Virgin Islands courts apply the doctrine in support of the public policy goal to "honor and enforce the allocation of risk to which the parties have agreed previously and to maintain analytical clarity between different areas of law, i.e. to prevent 'contract law [from] drown[ing] in a sea of tort .'" [93]

¶43    Here, the claim of negligence sounds in tort, and Cannon's claim arises solely from her contractual relationship with Fulcrum. The duties that Cannon alleges were breached were duties created and grounded in the contract as amended by the change orders, and any liability stems from the parties' contracts. Cannon's negligence claim essentially duplicates her breach of contract claim. Although Cannon alleges improper licensure as giving rise to her negligence claim, Fulcrum's licensing status has not been deemed improper by the DLCA, and Cannon's mere allegation is insufficient as material evidence. The Court finds that the parties allocated the risks of their bargains contractually. Accordingly, Cannon's negligence claim is barred under the economic loss doctrine.[94]

---

[91] *Ringo v. Southland Gaming of the United States V.I., Inc.*, No. ST-10-CV-116, 2010 V.I. LEXIS 62, at *1 (Super. Ct. Sep. 22, 2010); *accord Turnbull v. Univ. of the V.I.*, No. ST-07-CV-239, 2016 V.I. LEXIS 22, at *1 (Super. Ct. Mar. 2, 2016).

[92] *Gov't of the United States V.I. v. Takata Corp.*, 67 V.I. 316, 421-22 (Super. Ct. 2017).

[93] *Turnbull v. Univ. of the V.I.*, No. ST-07-CV-239, 2016 V.I. LEXIS 22, at *17 (Super. Ct. Mar. 2, 2016) (citing *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986)).

[94] *See Turnbull v. Univ. of the Virgin Islands*, No. ST-07-CV-239, 2016 WL 1047893, at *5-6 (V.I. Super. Mar. 2, 2016).

**E. As a matter of law, Cannon is not entitled to declaratory or injunctive relief.**

¶44    Cannon conflates the relief of remedy with a cause of action. Neither declaratory relief nor injunctive relief are causes of action. They are remedies. The Court denied Cannon's Motion for Temporary Restraining Order in June 2023 and for the reasons set forth above, the Cannon is not entitled to declaratory relief.

### 1. Injunctive Relief is not warranted.

¶45    The Virgin Islands Supreme Court has identified four factors to consider in deciding whether to grant a motion for temporary restraint order and/or preliminary injunction:

1) Whether movant has shown a reasonable probability of success on the merits;
2) Whether the movant will be irreparably harmed by denial of the relief;
3) Whether granting preliminary relief will result in even greater harm to the nonmoving party; and
4) Whether granting the preliminary relief will be in the public interest.[95]

¶46    The party seeking an injunction bears the burden of proof as to all four factors.[96] With respect to Cannon's Motion for Preliminary Injunction, the Court finds that Fulcrum has demonstrated that no genuine dispute of material fact exists. Cannon did not demonstrate a likelihood of success. Her allegation that Fulcrum was operating with inadequate licensing is hypothetical and is currently under scrutiny by the DLCA after Cannon filed a claim with the agency. Although Cannon maintains that she is owed for damages Fulcrum caused while fulfilling its contract, both parties agree that the work Fulcrum and Cannon contracted for was completed. Before and after photos of the project demonstrate a drastic improvement. The record shows a proper accounting of the  amount Fulcrum claims Cannon owes for work performed, and both parties  agree that they contracted in writing for the amount Fulcrum is claiming. The evidence corroborates this. There is no dispute of these or any other material facts on the record.

¶47    Moreover, the irreparable harm required for a preliminary injunction must be imminent harm that cannot be remedied by monetary damages.[97] There is no legal basis upon which this

---

[95] *3RC& Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 550.

[96] *Id.*

[97] "A party seeking injunctive relief must demonstrate that the injunction is necessary to avoid certain and imminent harm for which a monetary award does not adequately compensate— in other words, harm without an adequate legal remedy. And because the preservation of the court's power to render a meaningful decision after trial on the merits is a basic principle of preliminary injunction law, the Supreme Court of the Virgin Islands agrees with those courts— both state and federal—that have held that a party moving for a preliminary injunction must demonstrate primarily

Court can order Fulcrum to withdraw its lien while DLCA's review is pending. Fulcrum maintains that it filed a lien to protect its security interest in order to recover a disputed debt. Fulcrum has a statutory right to file its lien. Cannon filed her claim with this Court **after** Fulcrum filed its lien. The Court finds that under the circumstances, of which there is no genuine issue of material fact: (1) there is no imminent harm or irreparable injury presented by the presence of the lien; and (2) a monetary award would adequately compensate Cannon if she were entitled to an award of damages.[98]

¶48     In considering whether granting preliminary relief will result in even greater harm to the non-moving party, the Court finds in favor of Fulcrum. Any injury that Cannon may suffer by Fulcrum's construction lien remaining intact during DLCA's review pales in comparison to what Fulcrum may suffer if it is prevented from exercising its right of remedy by filing a lien. If Fulcrum did not file within the first 90 days after completion of work, it would have lost its right to file a lien for the debt owed—disputed or not.[99] The DLCA review may continue without interference either way. Until this debt dispute is reconciled, Cannon's property is essentially held as collateral, but Cannon has not lost her property, nor has she lost access to her property nor the use of it.[100] This factor weighs against granting injunctive relief.

¶49     As Fulcrum's counterclaim proceeds, Cannon has the right to present evidence on the merits of Fulcrum's claim and to argue that it should be offset or reduced by any sums that Cannon may claim were caused by alleged damage to her property.[101] If Fulcrum is restrained from foreclosing on its lien or delayed in that process, its lien is still protected so long as it follows that statutory requirement. However, Fulcrum is harmed by the delay in recovery of the money it claims it is owed. Accordingly, this factor weighs against injunctive relief.

¶50     "The effect on the public interest to be considered by this Court is not that justice be done, but that specific acts presumptively benefiting the public is not halted until the merits could be reached and a determination made as to what justice is required."[102] The Court finds that it is in

---

that irreparable harm is likely without the injunction." *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 545; *See also Bassil v. Klein*, 75 V.I. 19, 20 (V.I. Super. Ct. August 16, 2021) ("In the context of a preliminary injunction, Virgin Islands courts define irreparable injury or harm as harm that is certain and imminent for which a monetary award does not adequately compensate.").

[98] *Bassil v. Klein*, 75 V.I. 19, 20 (Super. Ct. 2021). ("However, the Supreme Court of the Virgin Islands does not recognize a rule that presumes irreparable injury when a party is denied its use of a property right. If a party is moving for a preliminary injunction based on the loss or deprivation of a real property right, the party must demonstrate sufficient evidence of irreparable harm that the Court can evaluate using the Petrus factors.").

[99] 28 V.I.C. § 264.

[100] "The damage or loss of a property right is not automatically presumed to constitute irreparable harm in the Virgin Islands. . . ." *Bassil v. Klein*, 75 V.I. 19, 22 (Super. Ct. 2021).

[101] *See* 28 V.I.C. § 271.

[102] *Yusef v. Hamed*, 59 V.I. 841, 857 (2013).

the public interest to allow parties access to legal avenues of remedy. Unless DLCA rules otherwise, Fulcrum met the requirements giving rise to placement of a construction lien on Cannon's property pursuant to Title 28 V.I.C. Chapter 12. No precedent exists for dissolving Fulcrum's lien while DLCA's review is pending. Fulcrum maintains that it filed a lien to protect its security interest in order to recover a disputed debt. While there is strong disagreement between the parties on the propriety of Fulcrum's recorded construction lien, there is insufficient evidence for the Court to conclude that Fulcrum acted in bad faith. In fact, the existing record shows no evidence of bad faith.[103] Cannon filed her claim with this Court after Fulcrum filed its lien, and both parties have every right to prosecute their claims as long as there are genuine issues of material fact to be disputed. Accordingly, this factor weighs in Fulcrum's favor.

¶51    Cannon alleges that there is no basis for payment of Fulcrum's final invoice and that Fulcrum should be precluded from filing a lien because statutory contractor and licensing requirements were not met. She has no proof of this as DLCA review her claim of these allegations is still pending. The Court finds that Fulcrum has adequately demonstrated that Cannon's claim involves no genuine dispute of material facts and injunctive relief is not warranted.

### 2. Declaratory Relief is not warranted.

¶52    As discussed above, the remedy of Declaratory Relief is not a cause of action and it is not justified here. For its part, Fulcrum provides a descriptive accounting of its claim for the contracted amount due from Cannon—in writing and with Cannon's signatures.[104] No genuine dispute exists as to any material fact with respect to Cannon's claims of misrepresentation, fraud, negligence, or breach of contract by Fulcrum. Accordingly, the Court determines that declaratory relief is not warranted.

### F. No genuine dispute of material fact supports a claim of Unfair Business Practices.

¶53    For reasons discussed above, this claim fails based on lack of a genuine dispute as to any material fact on the record indicating that Fulcrum engaged in unfair business practices.

---

[103] The requirement for the grant of relief under 28 V.I.C. § 275 ("Wrongful conduct under this chapter; remedies") is a finding of bad faith actions taken by the claimant. "Bad faith 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will.'" (*H.I. Constr., LLC v. Bay Isles Assocs., LLLP*, 53 V.I. 206, 222-223)(quoting *In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000))(citations omitted.).
[104] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

### IV.   CONCLUSION

¶54     The Court finds Fulcrum meets its burden of demonstrating that there exists no genuine issue as to any material fact that it is entitled to summary judgment as a matter of law on Cannon's Complaint. Summary Judgment motions must be granted unless the opposing party "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.[105] Cannon argues that there is no basis for payment of her debt to Fulcrum. However, Fulcrum has demonstrated there exist no facts to support Cannon's allegations of statutory violations or improper accounting. Fulcrum is entitled to summary judgment in its favor on Cannon's Complaint."[106]

A judgment consistent with this Memorandum Opinion follows.

DATED: December 12 , 2023

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

ATTEST:

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO**
Court Clerk Supervisor 12/12/2023

---

[105] *Brodhurst v. Frazier*, 57 V.I. 365, 391 (2012) (citation and quotation marks omitted).
[106] V.I. R. Civ. P. 56(c)(2). The summary judgment procedure resolves unsustainable claims and defenses in advance of trial, thereby narrowing the number of outstanding legal issues and serving the interests of judicial economy and efficiency. Accordingly, the Court applies these legal principles to the Motion.